UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **Robert D.,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**NANCY A. BERRYHILL,**<br>**Acting Commissioner of**<br>**Social Security,**<br><br>      **Defendant.** | Case No. 2:17-cv-02107 |

### Report and Recommendation

Plaintiff Robert D. seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of his application for supplemental security income and disability benefits insurance. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#14)** be **DENIED**, Defendant's Motion for Summary Judgment **(#18)** be **GRANTED**, and the decision to deny benefits be affirmed.

**I.     Background**

On December 19, 2014, Plaintiff filed applications for supplementary security income and disability benefits insurance, alleging disability beginning on April 4, 2014. The Social Security Administration denied Plaintiff's claim initially and on reconsideration. In November 2016, Plaintiff, represented by counsel, appeared and testified at a video conference hearing before an Administrative Law Judge (ALJ). The ALJ also heard testimony from an impartial vocational expert.

On December 2, 2016, the ALJ issued an unfavorable decision. (R. 21-40.) The ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar and cervical spine. (R. 23.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926). (R. 29.) Additionally, the ALJ found that

Plaintiff has the residual functional capacity (RFC) to perform medium-work as defined by 20 CFR 404.1567(c) and 416.967(c). *Id.* The ALJ found that Plaintiff is capable of performing past relevant work as a cook food preparer and as a food service worker. (R. 39.) The Appeals Council denied Plaintiff's request for review on April 19, 2017, making the ALJ's ruling the Commissioner's final decision.

II.     **Standard of Review**

In reviewing the ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, in order for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to [her] conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

III.    **Analysis**

a. **RFC**

Plaintiff contends the ALJ's RFC Assessment is not supported by substantial evidence. "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96–8p). "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p

First, Plaintiff argues the ALJ erred in her assessment of Plaintiff's balance limitations by discounting Plaintiff's need to utilize a cane. Additionally, Plaintiff

contends the Commissioner did not refute that the cane was needed for balance problems and therefore waived the issue.[1]

The Regulations provide that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p. The record does not display any "medical documentation establishing the need" for Plaintiff's cane use. The ALJ found the record does not support daily use of a cane or any medical necessity for a cane. (R. 35.) On April 14, 2015, Plaintiff called Dr. Paul Wilson's office and requested a prescription for a cane. (R. 512.) Plaintiff informed the nurse that his back and leg pain caused his balance to be a little off. *Id.* Without examining Plaintiff, Dr. Wilson submitted a prescription for a cane. During a consultative examination, Dr. Afiz Taiwo noted that Plaintiff "use[s] a cane," but also noted that Plaintiff "could walk greater than 50 feet without support" and that his "gait was non-antalgic without the use of cane." (R. 607.) A physician's assistant recognized that Plaintiff used a cane. (R. 661-62; see also 492.) State agency reviewing physicians Reynaldo Gotanco and Vidya Madala acknowledged Plaintiff's cane use, but opined Plaintiff did not require a cane or other assistive device to walk and could walk greater than 50 feet without support. (R. 119, 122-23.)

The ALJ considered these medical reports. No physician found that Plaintiff's symptoms required him to use a cane. Instead, they repeatedly found that he had a normal gait and was able to walk 50 feet without assistance. The medical records merely observed his use of the assistive device and did not detail the cane's necessity. (R. 661, 708, 718-20, 806, 867-68.) The ALJ also recognized that Plaintiff's daily activities, such as walking 1.5 miles to his attorney's office, shoveling snow, and performing yard and house work, did not support the need to utilize a cane. (R. 25, 104, 336, 371, 490, 537, 698, 721, 806.)

---

[1] The Commissioner's Motion directly responded to Plaintiff's arguments regarding the cane use. This argument was not waived.

Numerous points in the record demonstrated Plaintiff's ability to function without a cane. (R. 104, 119, 122-23, 336, 371, 490, 492-93, 537, 698, 721, 806.) The ALJ's cane analysis was supported by substantial evidence.

Second, Plaintiff argues the ALJ erred by discounting Plaintiff's alleged shoulder pain. Plaintiff contends the ALJ specifically erred because she listed Plaintiff's shoulder pain start date as April 2016 when the pain allegedly began in January 2015. Plaintiff also argues that the ALJ failed to include shoulder related limitations in the RFC.

Plaintiff cites to page 477 in the record to argue that his shoulder pain started in January 2015. Page 477 includes a medical record from an initial evaluation. But this document details alleged neck and back discomfort resulting from a car accident. The second page of this evaluation includes a notation that Plaintiff's back pain "[r]adiates to the left shoulder blade." (R. 478.) There are no further references to shoulder pain or resulting limitations. The ALJ also considered that Plaintiff's shoulder problems improved with treatment. (R. 34, 766, 804, 805); *see also Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (citations omitted) ("[C]ontrollable conditions do 'not entitle one to benefits…'"). Further, on July 12, 2016, Plaintiff had nearly full range of motion (R. 764-65.), with normal x-ray results and MRI results showing changes appropriate for Plaintiff's age. (R. 804-05.) The ALJ nonetheless accounted for Plaintiff's shoulder discomfort by including it as a non-severe impairment. (R. 24.) Plaintiff has not shown that the ALJ erred.

The Court finds that the ALJ supported her RFC assessment with substantial evidence. The Court will not replace the ALJ's findings with its own assessment of the evidence.

### b. Controlling Weight

Plaintiff argues that the ALJ erred by failing to grant controlling weight to Plaintiff's treating physician, Dr. Dallas, physical therapist, Tiffany de la Cruz, and the opinions of the Agency examining physicians.

The ALJ must give controlling weight to a treating source's opinion if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with other substantial evidence." *Punzio v. Astrue*, 630 F. 3d 704, 710 (7th Cir. 2011) (citing § 404.1527(c)). "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). An ALJ may choose not to give a treating physician's opinion controlling weight if it is inconsistent with the consulting physician's opinion or if it is internally inconsistent. *Skarbek v. Barnhart*, 390 F. 3d 500, 503 (7th Cir. 2004).

The Regulations give several factors that the ALJ considers in evaluating a treating physician's opinion: the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion. 20 C.F.R. §§ 404.1527(c).

As the Seventh Circuit has noted, "[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)).

First, Plaintiff contends the ALJ erred by discounting the evidence from Plaintiff's treating physician, Dr. Holly Dallas. Dr. Dallas opined in February 2016 that Plaintiff was restricted to standing and walking less than two hours in an eight-hour workday, lifting and carrying less than ten pounds, and could not participate in postural activities such as climbing, stooping, kneeling, crouching, and crawling. (R. 727-30.) Then, in November 2016, Dr. Dallas noted Plaintiff had diminished upper extremity strength, reduced knee motion, reduced lumbar motion, reduced hip strength, limited shoulder motion, used a cane for his gait, needed a stable object for support when squatting, and squatting ability was at 50%. (R. 860-68.)

Plaintiff asserts Dr. Dallas's opinion should be adopted because she was a treating physician and therefore able to consider the totality of Plaintiff's condition. Further, Plaintiff argues that the ALJ failed to give sufficient reasons for not adopting Dr. Dallas's opinion.

5

The ALJ concluded Dr. Dallas's opinions were not credible as they were internally inconsistent with the notes of the nurse practitioner and contrary to the medical record as a whole. (R. 38.) For instance, Plaintiff was observed by Nurse Practitioner Patrick McGuire as having normal range of motion (R. 741, 745), improvements in back pain (R. 746), and normal coordination (R. 741, 745, 748, 751). In addition, McGuire noted that a portion of Plaintiff's purported pain was "likely psychological." (R. 658.) Further, the ALJ reasoned Dr. Dallas's opinions were based upon Plaintiff's allegations instead of Dr. Dallas's medical opinion. (R. 727-30, 860-68.) Additionally, the ALJ questioned whether Dr. Dallas's February 2016 opinion occurred when she was Plaintiff's treating physician (R. 727-30) and further discredited her November 2016 opinion because Dr. Dallas is not a specialist. (R. 860-68.)

The Court finds the ALJ sufficiently supported her decision to not grant Dr. Dallas's opinion controlling weight.

Second, Plaintiff argues the ALJ erred by discrediting the opinion of physical therapist Tiffany de la Cruz. Ms. de la Cruz found Plaintiff could squat about 50% and could only squat safely by using a stable object. (R. 718-19, 867.) Additionally, Ms. de la Cruz found Plaintiff unable to maintain his balance without a cane. (R. 719, 867.)

Plaintiff contends that the ALJ committed legal error by discrediting Ms. de la Cruz's opinion and asserts de la Cruz's opinion regarding Plaintiff's use of a cane proves Plaintiff should have been limited to sedentary work.

"Even though a physical therapist is not an acceptable medical source for determining a claimant's impairments, this evidence may be used to show the severity of an impairment and how it affects a claimant's ability to function." *Thomas v. Colvin*, 826 F. 3d 953, 961 (7th Cir. 2016); citing 20 C.F.R. § 416.913(d)(1). The ALJ gave no weight to Ms. de la Cruz's opinions because they were based on the claimant's subjective allegations. (R. 37, 719-21, 866-68.) Further, the ALJ found Ms. de la Cruz's opinion to be contrary to the medical evidence, exams, and other testing. (R. 38.) For instance, although the record includes numerous observations of Plaintiff's use of a cane, the record does not include a physician opinion on the medical necessity of Plaintiff's cane use. (R. 342,

6

369, 375, 381, 719, 867.) As previously mentioned, although Dr. Wilson issued a prescription for Plaintiff's cane, it was done upon Plaintiff's request. (R. 511-12.)

The Court finds the ALJ supported her evaluation of Ms. de la Cruz's opinion with substantial evidence.

Third, Plaintiff argues the ALJ erred by discounting evidence from the state agency examining physicians, Drs. Reynaldo Gotanco and Vidya Madala. Drs. Gotanco and Madala stated: "While some activity does require greater length of time to accomplish, most tasks can be performed to completion." (R. 79, 106.) Nonetheless, Drs. Gotanco and Madala concluded Plaintiff could work at the full range of medium work. (R. 81, 109.)

Plaintiff argues the ALJ erred by not including Drs. Gotanco and Madala's opinion, that some of Plaintiff's activities may require greater amount of time to accomplish, in the hypothetical questions posed to the vocational expert ("VE") or the RFC assessment.

The ALJ gave great weight to Drs. Gotanco and Madala's opinions. The ALJ found Drs. Gotanco and Madala's conclusions that Plaintiff could perform medium work to be consistent with medical evidence within the record, diagnostic testing, and exam findings, while still considering Plaintiff's subjective complaints and reported daily activities. (R. 38.) Additionally, despite Plaintiff's claims, the ALJ sufficiently accounted for Plaintiff's limitations when questioning the VE by inquiring into limitations relevant to Plaintiff's need for more time to accomplish tasks. For instance, the ALJ asked "For unskilled, medium, or light jobs what's the tolerance for being off task? . . . How about missing work? What's the tolerance there?" (R. 69); *see also Baca v. Astrue*, 2013 WL 5431411, at *3 (C.D. Ill. Sept. 27, 2013) ("The most effective way for the ALJ to ensure the VE is fully apprised of the claimant's limitations is to include them in the hypothetical, but there is no *per se* requirement that the ALJ use these magic words ('concentration, persistence, and pace') in every case."). Further, the ALJ accounted for Plaintiff's physical limitations, as noted by Drs. Gotanco and Madala, by acknowledging Plaintiff is mildly limited in activities of daily living. (R. 28.)

7

The Court does not find reversible error in the ALJ's evaluation of Drs. Gotanco and Madala's opinions.

Fourth, Plaintiff argues the ALJ erred by discounting evidence from state agency examining physician, Dr. William Kohen. Dr. Kohen opined that Plaintiff's persistence and adaptability were impaired by physical problems with pain and depression. (R. 585.) Dr. Kohen observed Plaintiff making sudden, jerky movements with his head, which was attributed to neck pain. (R. 584.) Additionally, Dr. Kohen found Plaintiff to have adequate memory, comprehension, ability to sustain concentration, and social interaction skills. (R. 585.)

Plaintiff contends the ALJ should have adopted Dr. Kohen's opinion regarding persistence and adaptability because he was the Agency's examining consultant, and therefore knowledgeable on the disability program and unlikely to be biased in favor of Plaintiff.

The ALJ gave some weight to Dr. Kohen's opinion. The ALJ did not find Dr. Kohen's opinion to support any severe impairment because the medical record does not support any problems with persistence or adaptability. (R. 27.) For instance, Plaintiff on numerous occasions reported his pain to be either a one or two on a ten-point scale or that the pain was "very mild." (R. 560, 563, 566-70, 571-77, 580.) Further, the ALJ reasoned the sudden jerky movements of Plaintiff's head were not supported by the medical record where Plaintiff did not exhibit acute distress. (R. 77, 80, 88, 91, 103, 107, 118, 122, 432, 491, 507, 509, 515, 518, 606, 628, 635, 639, 645, 648, 650, 656, 756, 835.)

The Court finds the ALJ supported her decision to give Dr. Kohen's opinion some weight, but not controlling weight, as a result of contradictions within the record. The Court does not find reversible error.

Fifth, Plaintiff argues the ALJ should have adopted Dr. Taiwo's observations regarding Plaintiff's limitations in lumbar flexion, bending, and stooping. Dr. Taiwo observed in June 2015 that Plaintiff had limited lumbar flexion to thirty degrees (R. 610) and no limitations in squatting (R. 608.) Dr. Taiwo found Plaintiff to have degenerative disc disease. (R. 608.)

8

Plaintiff contends that Dr. Taiwo's observed limitations should have been adopted and they prevent Plaintiff from performing medium work. However, the ALJ considered and addressed at length Dr. Taiwo's June 2015 observations and properly accounted for his opinion within the RFC. (R. 29, 33.)

### c. Credibility

Next, Plaintiff argues that the ALJ's credibility analysis is reversible under the new standard enunciated in SSR 16-3p, which replaced the former SSR 96-7.[2] In 16-3p, the "Social Security Administration announced that it would no longer assess the 'credibility' of an applicant's statements, but would instead focus on determining the 'intensity and persistence of [the applicant's] symptoms.'" *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (citing SSR 16-3p).

Under SSR 16-3p, the ALJ "consider[s] all of an individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." "The determination or decision must contain specific reasons for the weight given to the individual's symptoms." SSR 16-3p.

SSR 16-3p clarifies that the ALJ's role is not to impeach the claimant's character, but that the ALJ should continue to assess the credibility of pain assertions by the claimant. *Cole*, 831 F. 3d at 412. Pain assertions "often cannot be either credited or rejected on the basis of medical evidence." *Id*.

Therefore, applying 16-3p, the Court must determine whether the ALJ focused on the regulatory factors, rather than Plaintiff's perceived truthfulness, in evaluating Plaintiff's subjective symptoms.

First, Plaintiff points to the ALJ's use of boilerplate language, which the Seventh Circuit has found to be "meaningless." *Parker v. Astrue*, 597 F. 3d 920, 927 (7th Cir. 2010). As the Seventh Circuit has noted, however, "use of boilerplate is innocuous when the

---

[2] Footnote 27 to SSR 16-3p provides that it applies to decisions issued after March 28, 2016. The ALJ's Decision was issued on December 2, 2016, so SSR 16-3p applies.

9

language is followed by an explanation for rejecting the claimant's testimony." *Schomas v. Colvin*, 732 F. 3d 702, 708 (7th Cir 2013).

Here, the ALJ introduced her credibility discussion with standard boilerplate language. The ALJ, however, went on to provide a detailed analysis of Plaintiff's alleged symptoms. (R. 34-39; *see Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) ("The decision also contains a considerable amount of boilerplate language and recitations. Despite these shortcomings, the ALJ adequately evaluated [the plaintiff's] credibility, and we see no reason to reverse.").

Second, Plaintiff contends the ALJ erred by not explaining what symptoms she credited and what symptoms were not credited. However, the ALJ does not have to explain which symptoms were or were not credible. *Shideler*, 688 F.3d at 312 ("ALJ's credibility findings need not specify which statements were not credible.").

Plaintiff offered a number of underdeveloped arguments, and the Court rejects them in a similarly cursory fashion as follows. Plaintiff argues the ALJ inappropriately discounted Plaintiff's history of working. Plaintiff argues that the ALJ overlooked that Plaintiff was fired for an inability to continue to do his job. Plaintiff cites a single record, where he reported that he has "been fire[d] for not being able to do a job." Nothing in this record shows that Plaintiff's limitations caused him to be fired, or details the type of work Plaintiff was unable to perform.

Plaintiff also argues that the ALJ incorrectly considered Plaintiff's daily activities when determining the credibility of Plaintiff's alleged symptoms. Although the Seventh Circuit has held that the ALJ should not place undue weight on a claimant's daily activities in assessing his ability to work full-time, *see Day v. Astrue*, 334 Fed. Appx. 1, 8 (7th Cir. 2009), the Regulations specifically instruct the ALJ to consider Plaintiff's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). Based on the available medical evidence, the Court concludes that the ALJ reasonably relied on the objective evidence, without undue influence on Plaintiff's daily activities, when finding that Plaintiff was not disabled.

Plaintiff argues the ALJ erred in considering Plaintiff's failure to follow his physicians' treatment plans when evaluating his alleged symptoms. The Seventh Circuit

has held that a plaintiff's failure to follow a treatment plan can be detrimental to the plaintiff's credibility finding. *Craft*, 539 F.3d at 679. Here, Plaintiff refused to follow his physician's advice on multiple occasions. (R. 513, 517, 662-63, 811.)

Plaintiff contends the ALJ erred by stating he was more interested in obtaining disability than in receiving treatment. Plaintiff mentioned his desire to receive disability benefits to his physicians on numerous occasions. (R. 435, 509, 517, 749, 769, 804, 822, 833, 840, 854.) Nonetheless, the ALJ did not base her entire credibility determination upon Plaintiff's repeated interest in obtaining disability, and the Court does not find reversible error for having noted it.

While Plaintiff disagrees with the result, the Court affirms the ALJ's credibility finding so long as the ALJ "gives specific reasons that are supported by the record." *Skarbek*, 390 F.3d. at 505. The ALJ performed her credibility analysis in accordance with SSR 16-3p and listed specific reasons in support of her determination that Plaintiff's alleged symptoms were not credible. The Court does not find reversible error.

The Court recommends denying Plaintiff's request for reversal.

## IV. Conclusion

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#14)** be **DENIED**, Defendant's Motion for Summary Judgment **(#18)** be **GRANTED**, and that the decision to deny benefits be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 24th day of August, 2018.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE