## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| ROBERT  D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-2107 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | Honorable Joe B. McDade |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER & OPINION</u>

This matter is an appeal of the Commissioner of Social Security's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI") to Plaintiff Robert D. Before the Court is the Report and Recommendation of United States Magistrate Judge Eric I. Long (Doc. 20) filed on August 24, 2018, recommending this Court affirm the Commissioner's decision. Plaintiff has filed objections (Doc. 21) to the Report and Recommendation. Also before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 14) and accompanying Memorandum of Law (Doc. 15), the Commissioner's "Motion For An Order Which Affirms The Commissioner's Decision" and Memorandum of Law (Doc. 18), and finally, the Plaintiff's "Response To The Commissioner's Motion And Memorandum In Support Of Summary Affirmance" (Doc. 19). Thus, the motions have been fully briefed and the Plaintiff has filed objections to the Report and Recommendation of the Magistrate Judge, which he is entitled to do under Federal Rule of Civil Procedure 72(b)(2) and 28 U.S.C. § 636(b)(1)(C).

1

Defendant has brought a motion (Doc. 22) to extend the time within which she can respond to the Plaintiff's objections to the Report and Recommendation. Federal Rule of Civil Procedure 72(b)(2) permits a party to respond to another party's objections within fourteen days after being served with a copy. Ordinarily, the Court would be more permissive of such a request. However, while the Court is sympathetic to counsel's plight as a newly reassigned attorney to the matter, the Court will deny the motion for extension of time. This particular case has been pending well over a year and deserves prompt resolution.

For the reasons stated below, Plaintiff's objections are overruled and Magistrate Long's Report and Recommendation is hereby adopted in full.

## LEGAL STANDARDS

### I.   Disability Standard

To qualify for disability insurance benefits and/or SSI under the Social Security Act, claimants must prove that they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. §§ 416(i)(1), 1382c(a)(3)(A). Additionally, the impairment must be of a sort "which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 1382c(a)(3)(A). With respect to a claim for a period of disability and disability insurance benefits, claimants must also show that their earnings record has acquired sufficient quarters of coverage to accrue disability insurance benefits and that their disability began on or before the date that insurance coverage ended. 42 U.S.C. §§ 416(i)(3), 423(c)(1)(B).

The Commissioner engages in a factual determination to assess claimants' abilities to engage in substantial gainful activity. *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir. 1980). To do this, the Commissioner uses a five-step sequential analysis to determine whether claimants are entitled to benefits by virtue of being disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1); *Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999).

In the first step, a threshold determination is made as to whether the claimant is presently involved in any substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in such activity, the Commissioner then considers the medical severity of the claimant's impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments meet the twelve-month duration requirement, the Commissioner next compares the claimant's impairments to a list of impairments contained in Appendix 1 of Subpart P of Part 404 of the Code of Federal Regulations and deems the claimant disabled if the impairment matches the list. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not match the list, then the Commissioner considers the claimant's Residual Functional Capacity ("RFC")[1] and past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If claimants are still able to perform their past relevant work, then they are not disabled and the inquiry ends. *Id.* If they are unable to perform their past relevant work, then the Commissioner considers the claimants' RFC, age, education, and work experience to see if they can transition to

---

[1] Residual Functional Capacity is defined as "the most [claimants] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If a transition is not possible, then the claimant is deemed disabled. *Id.*

The plaintiff has the burden of production and persuasion on the first four steps of the Commissioner's analysis. *McNeil*, 614 F.2d at 145. However, once the plaintiff shows an inability to perform any past relevant work, the burden shifts to the Commissioner to show an ability to engage in some other type of substantial gainful employment. *Id.* (citing *Smith v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 857, 861 (7th Cir. 1978)).

## II. Standard of Review

When a claimant seeks judicial review of an ALJ's decision to deny benefits, the Court must "determine whether it was supported by substantial evidence or is the result of an error of law." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The Court's review is governed by 42 U.S.C. § 405(g), which provides, in relevant part: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Maggard*, 167 F.3d at 379 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In a substantial evidence determination, the Court will review the entire administrative record, but it will "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In particular,

credibility determinations by the ALJ are not upset "so long as they find some support in the record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). The Court must ensure that the ALJ "build[s] an accurate and logical bridge from the evidence to his conclusion," but he need not address every piece of evidence. *Clifford*, 227 F.3d at 872. Where the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Additionally, the Court may accept, reject, or modify (in whole or in part) the findings or recommendations of the magistrate judge. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* In making this determination, the Court must look to all of the evidence contained in the record and "give fresh consideration to those issues to which specific objections have been made." *Rajaratnam v. Moyer,* 47 F.3d 922, 924 n.8 (7th Cir. 1995) (internal quotation marks omitted). The Court reviews the other portions of a report and recommendation for clear error. *See Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir. 1999).

## DISCUSSION

The relevant procedural history and factual background is sufficiently set forth in the Report and Recommendation (Doc. 20 at 1-2). Plaintiff raises the following objections: (1) the ALJ erred in assessing the Plaintiff's use of a cane; (2) the ALJ failed to demonstrate his RFC finding was supported by substantial

evidence; and (3) the ALJ erred in evaluating Plaintiff's symptoms. Each objection will be addressed in turn.

## I.    Plaintiff's Use Of A Cane

Plaintiff argued in his opening brief that his use of a cane assured an outcome of disability under the regulations given that the Vocational Expert ("VE") testified he would be limited to sedentary work if he needed to use a cane and given his advanced age and limited vocational background. The ALJ found the record did not support daily use of a cane or any medical necessity for a cane (R. 35)[2] and Judge Long found that determination was supported by substantial evidence (Doc. 20 at 2-3).

Plaintiff claims the ALJ overlooked that Dr. Holly Dallas, his treating physician, opined that he needed a cane. Dr. Dallas did indeed write in a November 2016 medical statement that Plaintiff needed a cane to ambulate and was unable to safely ambulate without such a cane. (R. 861). However, the ALJ did not simply ignore Dr. Dallas's opinion. Instead, the ALJ found that Dr. Dallas's treatment record of Plaintiff and her objective findings on exams and diagnostic testing, failed to support the limitations provided in the November 2016 statement where ambulating with the cane was listed. The ALJ further found that Dr. Dallas's opinion was entirely based on the functional capacity evaluation that, in turn, was based upon the Plaintiff's subjective allegations. The ALJ also concluded that Dr. Dallas's treatment notes were contrary to her indication that Plaintiff was unable to

---

[2] Citation to (R. ___ ) refers to the page in the certified transcript of the entire record of proceedings provided by the Social Security Administration.

safely ambulate without a cane because Plaintiff was documented as having a normal gait and station multiple times in the record. (R. 756).

Judge Long cited to Social Security Ruling 96-9p and recognized that the social security regulations provide that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." (Doc. 20 at 3). He found no such medical documentation in the record. Plaintiff attempts to obfuscate the issue by focusing on the ALJ's alleged failure to recognize that Plaintiff required a cane because of balance issues, not knee difficulties, but the Court finds the distinction is irrelevant because the Plaintiff has not pointed to any medical evidence in the record that establishes he needed a cane as a matter of medical necessity to mitigate balance problems. Plaintiff's references to the record (Doc. 21 at 3) are to Plaintiff's subjective statements and the physician's record of them, not medical documentation establishing the need for the cane. (*E.g.*, R. 511-12, 867-68, 719-20).

Plaintiff originally requested a prescription for a cane in April 2015 and reported he had balance issues. (R. 512). His primary care physician provided the prescription without any comment as to its medical necessity. There are ample places in the record where Plaintiff is observed with a normal gait (R. 77, 80, 88, 91, 103, 104, and 119). There are also places in the record where his gait was observed as cautious and shuffling in 2013 and 2014 (R. 107, 224, 46). There are also places in the record where Plaintiff was observed to have an impaired gait. In 2015, for example, he was recorded as having an impaired gait (R. 674), yet later that same

year it was recorded that he was negative for myalgias, joint swelling or gait problem (R. 741).

In short, this Court cannot find the ALJ erred in her assessment of Plaintiff's cane use. No physician prescribed Plaintiff a cane in response to medical necessity. The ALJ and the Magistrate Judge both poured over the record and discussed their reasons for rejecting Plaintiff's use of a cane as a reason for finding disability. The Court has reviewed the record and determines Plaintiff's use of a cane was never deemed a medical necessity until Dr. Dallas wrote that he needed it to ambulate. And even though Dr. Dallas wrote the cane was necessary, there are ample examples of Plaintiff having a normal gait and engaging in activities that undermine the notion that a cane was necessary , such that there is substantial evidence to support the conclusion that a cane was not necessary for Plaintiff to ambulate.

## II. Whether The RFC Finding Was Supported By Substantial Evidence

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled." *Id.* "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) [...] may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-

8p, 1996 SSR LEXIS 5, *5. "RFC represents the most that an individual can do despite his or her limitations or restrictions." *Id.* at *12.

###### A.    Evidence from Drs. Gotanco and Madala

Plaintiff first contends that the ALJ ignored crucial opinion evidence provided by the Commissioner's own consulting physicians. Drs. Gotanco and Madala both opined that "[w]hile some activity does require greater length of time to accomplish, most tasks can be performed to completion [by the Plaintiff]." (R. 79, 106). It bears repeating that an ALJ does not have to discuss every piece of evidence. The Magistrate Judge recognized this and found that both Drs. Gotanco and Madala concluded Plaintiff could still work at the full range of medium work. (R. 81, 109). Because the consulting physicians found Plaintiff could still work at the full range of medium work, the observation that Plaintiff takes a greater amount of time to accomplish some activities does not render the ALJ's finding that Plaintiff could still perform a full range of medium work incorrect or unsupported.

###### B.    Evidence from Dr. Kohen

Next, Plaintiff complains that the ALJ erred in dismissing the opinion of Dr. Kohen, which was that Plaintiff's persistence and adaptability were impaired by physical problems with related pain and depression. (R. 585). Dr. Kohen wrote "In my opinion, Mr. Davenport has adequate memory, comprehension, ability to sustain concentration, and social interaction skills. Mr. Davenport's persistence and adaptability are impaired by his physical problems with related pain and depressed mood." (R. 585). The ALJ gave Kohen's opinion "some weight as consistent with the findings on the evaluation. However, [he did] not find the opinion or evaluation

support[ed] any severe impairment. Similarly, the longitudinal evidence d[id] not support any problems with his persistence or adaptability." (R. 27). Plaintiff's difficulties in maintaining concentration, persistence or pace are described elsewhere in the record as "mild." (R. 78, 105).

The Court agrees with the Magistrate Judge that on several occasions Plaintiff reported his pain to be low on a ten-point scale or that the pain was otherwise mild. (R. 560, 563, 566-70, 571-77, 580). Thus, having gone over the record, this Court agrees that there does not appear to be longitudinal evidence of severe impairments in persistence and adaptability. Plaintiff certainly has not directed this Court to any such evidence in the record supporting the assertion that his persistence and adaptability were so impaired as to render him disabled. For these reasons, the Court finds that the ALJ did not err in her assessment of Dr. Kohen's opinion.

### C.    Evidence from Dr. Dallas

Third, Plaintiff takes issue with the ALJ's decision not to afford great weight or controlling weight to the opinion of his treating physician, Dr. Dallas. The Court already explained why the ALJ's treatment of Dr. Dallas's opinion was not erroneous nor unsubstantiated. *See supra* pp. 6-7. The Court admits that it finds the ALJ's statement that Dr. Dallas was not a specialist, and thus her opinion of limited utility, to be troubling. But that was not the sole reason the ALJ gave for not giving Dr. Dallas's opinion more or controlling weight. The ALJ found that Dr. Dallas's treatment record of Plaintiff and her objective findings on exams and diagnostic testing, failed to support the limitations provided in the November 2016

statement where ambulating with the cane was listed. The ALJ further found that Dr. Dallas's opinion was entirely based on the functional capacity evaluation that, in turn, was based upon the Plaintiff's subjective allegations.

Plaintiff cites *Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014), for the proposition that the mere absence of detailed treatment notes, without more, is "insufficient grounds for disbelieving the evidence of a qualified professional." But the ALJ did not merely rely on a purported absence of detailed treatment notes. She also concluded that Dr. Dallas's treatment notes were <u>contrary</u> to her indication that Plaintiff was unable to safely ambulate without a cane as Plaintiff was documented as having a normal gait and station multiple times in the record (R. 756). *Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) (rejecting an ALJ's decision to reject a treating physician's opinion based on the purported absence of detailed treatment notes but indicating the citation of contrary evidence can support the decision to reject a treating physician's opinion). For these reasons, the ALJ's decision to not afford Dr. Dallas's opinion controlling or great weight was not erroneous and did not conflict with substantial evidence in the record.

### D.     Evidence Provided by Physical Therapist de la Cruz

Next, the Plaintiff complains that the ALJ erred in discounting opinion evidence provided by Plaintiff's physical therapist, de la Cruz, which provided some bases for Dr. Dallas's opinions. Therapist de la Cruz wrote that Plaintiff could only squat at 50% and only with the assistance of a stable object (R. 867, 718-19); that he could not maintain his balance without a cane (R. 868, 720); and that he was limited to carrying 5 pounds (R. 868, 720). These limitations, if accepted, would support a

finding of disabled. However, the ALJ gave no weight to these opinions. (R. 37-8). The ALJ was primarily concerned that de la Cruz's opinions were based upon the Plaintiff's subjective allegations and not the objective medical evidence. She wrote that the inconsistencies with the Plaintiff's subjective allegations and the medical evidence undermined his assertions and that the longitudinal medical evidence, exams, and diagnostic testing failed to support de la Cruz's functional capacity evaluation and the limitations provided therein. (R. 37-8). It is true that several of de la Cruz's observations were prefaced with "[Plaintiff] notes…" or "Client's reports:", which supports the ALJ's conclusion that de la Cruz's opinions were based primarily on Plaintiff's own allegations, which the ALJ found unsupported by the other evidence in the record. As an example, the ALJ and the Magistrate Judge both pointed to the fact that Ms. de la Cruz relied quite heavily on the Plaintiff's use of a cane, but as already discussed, the overall record did not support cane use as a medical necessity.

The Court will not find the ALJ failed to support her treatment of de la Cruz's opinions with reference to substantial evidence. She clearly compared de la Cruz's assertions, which she found to be based upon Plaintiff's subjective complaints, against the longitudinal medical evidence, exams, and diagnostic testing and found de la Cruz's assertions to be unsupported.  As to the issue of de la Cruz's opinions being based upon Plaintiff's subjective allegations, the Court is aware of cases where courts have expressed contempt for the idea that evidence can be disregarded where it is based solely on the claimant's subjective statements, *see*, *e.g.*, *Cole v. Colvin*, 831 F.3d 411, 415-46 (7th Cir. 2016), but an ALJ can reject even

a treating physician's opinion when "the ALJ concludes it is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). Thus, the Court does not conclude the ALJ's treatment of de la Cruz's evidence was erroneous.

### E. Evidence of Plaintiff's Lumbar Flexion

The Plaintiff next contends that the ALJ erred in not assessing evidence that he was limited in his ability to bend. In 2014, Plaintiff's lumbar flexion was recorded as 30 out of 60 (R. 530). In February 2015, his lumbar flexion was recorded as "normal" (R. 495). In June 2015, it was recorded as 30 out of 60 again (R. 610). Regardless, Plaintiff claims the Agency's own examiner found Plaintiff's lumbar flexion limited to thirty degrees and functional capacity testing finding squatting limited to 50%. Plaintiff is correct; Dr. Taiwo made that finding and stated Plaintiff has suffering from degenerative disc disease of the lumbar and cervical spine in June 2015. (R. 610, 608). The ALJ wrote:

> Dr. Taiwo assessed the claimant with degenerative disc disease of the lumbar spine. Notably, this was a month after the car accident with alleged neck pain, but the claimant had no neck findings and he did not complain of significant neck issues or pain. He complained of lumbar back pain, but he also reported that radiculopathy pain resolved after chiropractic adjustment (Exhibit 10F/l). This exam was almost one year after the claimant's alleged onset date and it does not support his alleged functional limitations in lifting, sitting, standing or walking. It does not support his alleged limited daily activities. Again, other than tenderness, the examination was normal.

(R. 31). The ALJ mentioned Dr. Taiwo's June 2015 observation that Plaintiff was tender at T2 to T6 and LI to L4 and had limited range of motion of the lumbar

spine. (R. 33). The ALJ also mentioned that x-rays of Plaintiff's lumbar spine from June 29, 2015 showed mild multilevel spondylosis and x-rays of the cervical spine from June 29, 2015 revealed no acute osseous abnormality. She also noted Dr. Taiwo's medical impression that Plaintiff suffered degenerative disc disease of the lumbar and cervical spine and bilateral supraspinatus tendinitis. (R.33).

Importantly, the ALJ also noted that Plaintiff saw a spine specialist in June 2015, who wrote in October 2015 in regard to his June 2015 findings that

> [Plaintiff] ask[ed] me about his work limitations. I told him that this is best done and assessed by Occupational Medicine. I don't have the tools to do that. **From my last report and imaging studies I thought he should be able to do any normal activity or work.** However, his pain condition may be limiting.

(R. 739 (emphasis added)). Dr. Ahmad noted in June 2015 that Plaintiff's "lumbar spine flexion and extensions are limited and painful right away." (R. 598). So, despite that Dr. Ahmad noted Plaintiff's "lumbar spine flexion and extensions are limited and painful right away," he still apparently felt Plaintiff should be able to do any normal activity or work. Against that backdrop, there is no way this Court can conclude the ALJ erred in allegedly not assessing evidence that he was limited in his ability to bend because of lumbar flexion. The ALJ clearly considered substantial evidence of lumbar flexion and found it did not counsel towards a finding of disability. She did not err in doing so.

## F.    Evidence of Shoulder Pain

Finally, in regard to his argument that the ALJ's RFC finding was not supported by substantial evidence, Plaintiff contends that the ALJ erred in assessing his shoulder pain. (Doc. 21 at 11). He states his shoulder pain dates back

to January 2015. In his opening brief, Plaintiff discussed in much greater detail why his shoulder pain was a limitation disallowing him from work. (Doc. 15 at 5-6, 17). The ALJ wrote:

> The medical evidence supports right shoulder impairment. However, overall, there are few findings on exams and he only started complaining of problems in April of 2016 (Exhibit 29F/35, 37). On April 4, 2016, the claimant presented at the emergency room for right shoulder pain for the past three to four days. He reported that he was not taking anything for his symptoms. He reported that he was out of Norco and Flexeril that he takes for his back pain. He was prescribed Naproxen. He was subsequently referred for an ortho evaluation and he presented for such exam in July of 2016 (Exhibit 28F/26). He reported that he had pain off and on for a number of years, but over the last six weeks, it has worsened. On exam with Danny McFarlin PA-C. he had good range of motion in flexion and abductions with a little pain at the upper end of range of motion (Exhibit 28F/26). He had mildly positive impingement testing. He did not have any strength differences (Exhibit 28F/27). X-rays of the right shoulder from July 12, 2016 showed no significant arthritis and it was an unremarkable exam (Exhibit 28F/37; 29F/ 54). He had an injection that helped (Exhibit 29F /2). The claimant also testified that the injection helped with improvement in mobility. MRI studies showed possible SLAP tear. The MRI showed changes appropriate for a person his age (Exhibit 29F/2; 28F/33). In August of 2016, an orthopedic exam with Robert Gurtler M.D., the claimant had near full range of motion (Exhibit 29F/3). He did not have a rotator cuff tear. Despite the possible SLAP tear, he had near full range of motion. The treatment that the claimant has done has helped.

(R. 24).

Dr. Gurtler noted that Plaintiff claimed to be suffering shoulder pain off and on for years. (R. 768). The Magistrate Judge found that the ALJ considered that Plaintiff's shoulder problems improved with treatment (R. 34, 766, 804, 805) and that on July 12, 2016, Plaintiff had nearly full range of motion (R. 764-65), with normal x-ray results and MRI results showing changes appropriate for Plaintiff's age (R. 804-05). If Plaintiff had this shoulder pain for years, while he worked, and

the longitudinal record demonstrates the pain has improved over time, which it does, then it is difficult for this Court to see how the ALJ erred in not taking the shoulder pain into account as nothing more than a non-severe impairment.

In sum, the ALJ did not err in her consideration of Plaintiff's shoulder pain.

## III. Whether The ALJ Erred In Evaluating Plaintiff's Symptoms

### A. The ALJ's Use of the Phrase "not entirely consistent"

Plaintiff argues that the ALJ employed an incorrect standard of reviewing the evidence of Plaintiff's symptoms.[3] (Doc. 21 at 13). In her explanation of how she determined Plaintiff's RFC, the ALJ wrote in summary that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms <u>are not entirely consistent</u> with the medical evidence and other evidence in the record." (R. 34 ("emphasis added")). Plaintiff points out that under 20 C.F.R. § 404.953(a) the ALJ is to use a preponderance of the evidence standard to reach her decision and Plaintiff contends the ALJ did not employ this standard as evidenced by her stating the Plaintiff's statements were not entirely credible with the other evidence.

---

[3] Additionally, Plaintiff claims the Commissioner waived this issue by failing to address whether the ALJ used the correct legal standard. The Court finds the Commissioner did waive the issue because she failed to specifically address what was the appropriate legal standard or specifically why the issue was inconsequential. In response to Plaintiff's argument, the Commissioner failed to indicate whether using the term "not entirely consistent" indicated the ALJ was using a more demanding standard of decision than preponderance of the evidence. Nevertheless, as will be discussed further, the Court does not believe the ALJ erred such that remand or reversal is necessary.

This argument has superficial appeal but is ultimately without merit. Social Security Ruling 16-3p instructs that in evaluating an individual's symptoms, the ALJ will first determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. Once that determination is made, the ALJ will then evaluate the intensity and persistence of an individual's symptoms by considering the objective medical evidence; the individual's statements concerning her symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. As to a plaintiff's statements, SSR 16-3p specifically states the ALJ "will evaluate whether the statements are consistent with objective medical evidence and the other evidence."

It is clear from reading the ALJ's decision that her use of the boilerplate language "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms <u>are not entirely consistent</u> with the medical evidence and other evidence in the record…." (R. 34 ("emphasis added")) was innocuous. Moreover, the Court reads *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010)—the case mentioned by the Magistrate Judge and cited by the Plaintiff in support of his contention that the use of boilerplate language undermines the ALJ's decision—as saying nothing more than when <u>only</u> boilerplate language is utilized, reviewers of the ALJ's decision are left without an idea of the weight the trier of fact gave the testimony. That is not the case here, as the ALJ's decision does not contain boilerplate language only; it is also rife with examples of her discounting the Plaintiff's statements (as well as several of his medical, therapeutic and lay opinion

17

givers) concerning his symptoms because she decided they were contradicted by the objective medical evidence. (R. 33-39). That is why the Magistrate Judge analyzed this point of error through the lens of whether the ALJ's summary language was mere superfluous boilerplate that did not have the effect of undermining the decision (Doc. 21 at 9-10) rather than stating specifically whether the correct standard of decision was applied.

In short, the Court finds no error in the Magistrate Judge's treatment of this argument and after review of the ALJ's decision, specifically finds that the use of the phrase "not entirely credible" did not indicate she employed a more demanding standard of decision than the preponderance of the evidence standard. Thus, the ALJ did not commit reversible error.

### B.    Whether the ALJ Complied with the Agency's Own Rulings

Plaintiff's next contention is that the ALJ's summary paragraph recounted above, failed to comply with the Agency's own rulings. First, the Plaintiff alleges the ALJ ignored the requirement to explain "which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions," Social Security Ruling 16-3p, 2016 WL 1119029, at *8.  Second, he alleges the ALJ ignored the requirement to include in the decision a "discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," Social Security Ruling 96-8p, 1997 WL 374184, at *7. The Court agrees with the Magistrate Judge in that the ALJ did not commit reversible error.

In a summary paragraph, the ALJ wrote:

> After careful consideration of the evidence, I find that the claimant's
> medically determinable impairments could reasonably be expected to
> cause the alleged symptoms; however, the claimant's statements
> concerning the intensity, persistence and limiting effects of these
> symptoms are not entirely consistent with the medical evidence and
> other evidence in the record for the reasons explained in this decision.

(R. 34). Plaintiff would have this Court believe that this was all the ALJ wrote, but

that is not so. The ALJ wrote several pages of analysis supporting her RFC

determination with several references as to why Plaintiff's reported symptom-

related functional limitations and restrictions could not reasonably be accepted as

consistent with the medical and other evidence. For example, the ALJ wrote:

> Despite the claimant's extensive allegations and resulting functional
> limitations, the medical evidence supports conservative treatment only,
> and few findings. Moreover, there was no ongoing treatment from the
> alleged onset date to support the claimant's allegations of an inability to
> work. He alleges disability as of April 4, 2014. On October 1, 2014, he
> presented for treatment with primary care physician, Paul Wilson M.D.
> for follow up and to obtain paperwork for a driver's license (Exhibits
> 5F/7; duplicated at 23F/3). <u>Inconsistent with his allegations of an
> inability to work and disability, the claimant presented as a relatively
> healthy appearing male in no acute distress</u> (Exhibit SF /7). There were
> unremarkable findings on exam. The claimant did not complain of
> significant pain or problems. He wanted paperwork completed to get his
> license back. (R. 30).
>
> ****
>
> The <u>medical evidence supports some complaints of neck pain with little
> treatment and few findings</u>. On several emergency visits, he had no
> significant findings of the back or neck. Also, his primary care and
> physical consultative exams did not support significant findings.
> Accordingly, various exams from different physicians or treating
> professionals fail to support his allegations of limitations…. <u>Despite his
> allegations of extensive pain and limitations in sitting, standing,
> walking and lifting, he consistently presented in no acute distress</u>. (R.
> 35).

Accordingly, the evidence of record does not support the claimant's alleged loss of functioning. He has extreme complaints, but the objective findings do not support his allegations. At the hearing, the claimant testified to having side effects from medications including lightheadedness and drowsiness, but these are not supported in the record. There are no significant complaints of side effects to providers. Contrary to side effects, he requested narcotic medications. (R. 35).

****

[H]is allegations of limitations in walking, sitting, standing, lifting and using a cane are contrary to his shoveling snow, doing yard work, and walking 1.5 miles to get to his attorneys office to deliver papers (Exhibits 10F/1; 14F; 24F/31, 35; 29F/4). Although these individual activities are not dispositive of what the claimant can do daily, these activities are contrary to his allegations and his functional limitations. The activities certainly suggest more abilities and activities than alleged. He testified to limited lifting of 7 or 8 pounds; however, inconsistent to such limited lifting, at the physical consultative exam, he alleged limiting lifting to 20 pounds (Exhibit 10F/2). Moreover, when he goes out, he gets around by walking and using public transportation (Exhibit 5E/7). He reported that when he can, he gets a ride. He is able to shop and go to food battle There is no way to independently verify the claimant's actual daily activities, but the objective clinical objective findings are inconsistent with his allegations. (R. 36).

This is the sort of thorough discussion the Seventh Circuit upheld in *Shideler v. Astrue*, 688 F.3d 306, 310–12 (7th Cir. 2012), despite the court finding the ALJ's decision in that case also contained a considerable amount of boilerplate language and recitations. The Plaintiff contends the Magistrate Judge's reliance on *Shideler* is misplaced because in that case, the ALJ found the claimant's symptoms not supported by the medical and other evidence. (Doc. 21 at 15). The Plaintiff is clearly wrong. As set out above in the block quoted text, the ALJ here similarly found Plaintiff's symptoms not supported by the medical and other evidence despite her use of the boilerplate and possibly incorrect language concerning "not entirely consistent."

In conclusion, the Court is satisfied that the ALJ sufficiently evaluated the Plaintiff's reported symptom-related functional limitations and restrictions.

## C. Several More Purported Errors Supporting Remand

Plaintiff contends the ALJ committed at least five more specific errors in evaluating Plaintiff's symptoms that demand remand. Each error will be considered in turn.

### 1. ALJ's Purported Undue Reliance on Objective Evidence

Plaintiff contends that the ALJ placed too much reliance on objective medical evidence in finding that Plaintiff's reported symptom-related functional limitations did not render him disabled.

"[A]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (quoted by *Cole* 831 F.3d at 416). This is echoed by the regulations themselves, which provide

> "[o]bjective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."

20 C.F.R. § 404.1529(c)(2). However, the regulations further provide

> Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully

consider any other information you may submit about your symptoms.... Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons. Section 404.1520c explains in detail how we consider medical opinions and prior administrative medical findings about the nature and severity of your impairment(s) and any related symptoms, such as pain. Factors relevant to your symptoms, such as pain, which we will consider include:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). Thus, an ALJ cannot simply reject a plaintiff's

statements concerning his pain or other symptoms based on the objective medical

evidence alone; she must also consider the factors relevant to symptoms listed

above. That is exactly what the ALJ did here in pages 15 through 17 of her decision

(R. 35-37). The Court will not recount the information again. Suffice it to say that

the Court is satisfied that the ALJ considered such factors as the nature and

:frequency of treatment, Plaintiff's daily activities, work history, in addition to the

objective medical evidence in reaching her decision that Plaintiff's statements concerning his symptoms did not support a finding of disability.

### 2. ALJ's Treatment of Plaintiff's Treatment Course

Plaintiff complains next that the ALJ held against him the fact that he did not follow his treatment plan. Treatment, of course, is specifically mentioned as something an ALJ will consider when evaluating allegations of disabling symptoms. 20 C.F.R. § 404.1529(c)(3)(v). The Plaintiff states the ALJ was wrong to fault him for not being interested in surgery or injections because it was the specialist who recommended against those treatment measures. (Doc 21 at 17). This evidence cuts both ways. Dr. Ahmad wrote Plaintiff was not interested in surgery or injections and he also wrote the same was not advised. The Court cannot determine whether Plaintiff was not interested because the doctor said such treatment was unadvised or vice versa. The Court cannot say the ALJ was wrong in her interpretation of the evidence because elsewhere in the record, a different, subsequent provider recorded "At that time [that he saw the spine specialist, Dr. Ahmad] he was not interested in injections, and he states he still is not interested in injections." (R. 808). This subsequent statement supports the ALJ's interpretation that Plaintiff was not interested in injections was plausible, and it is further plausible the injections could have alleviated his pain since elsewhere in the record, we see that injections had alleviated pain associated with other parts of his body (R. 805).

The Court also finds the ALJ's regard for Plaintiff's narcotic use to be inconsequential. Plaintiff told a physician that narcotics was the only thing that helped his back a lot but that physician told him it was not his practice to prescribe

narcotics for chronic back pain. (R. 645). The ALJ found that his infrequent use of pain medication was contrary to his allegations of pain. This is sensible. Obviously if Plaintiff's pain was not being alleviated he would have been using the pain medication more frequently. Thus, Plaintiff's infrequent use of the pain medication supports the conclusion that the pain must not have been so severe. Moreover, the ALJ did not view Plaintiff's request for more pain medication as an indication he was not experiencing pain but rather as an indication he was exaggerating his allegations of side effects from the pain medication. (R. 33). The Court ascribes no discrepancy to the ALJ's treatment of this evidence.

### 3. ALJ's Discounting Plaintiff's Work History

The ALJ mentioned that Plaintiff asserts he has worked through years of pain. The Court agrees with Plaintiff that this assertion alone cannot be fairly taken to mean Plaintiff's pain is not disabling. However, the ALJ did not rely on that assertion alone; she considered it in juxtaposition to 1) the fact that the objective medical evidence does not support Plaintiff's condition has worsened over time and 2) the appearance from the record that Plaintiff was more concerned with obtaining disability status and documentation in support of that than actually securing treatment for back pain or his other impairments. The ALJ is entitled to make her own interpretations of the evidence as long as they are not patently wrong. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("We will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)").

## 4.  ALJ's Consideration of Plaintiff's Daily Activities

The Plaintiff takes issue with the Magistrate Judge's alleged failure to recognize that the ALJ did not properly assess Plaintiff's daily activities. The Magistrate Judge noted that the Seventh Circuit has held that ALJs should not place undue weight on claimants' daily activities in assessing their ability to work full-time, *see Day v. Astrue*, 334 Fed. Appx. 1, 8 (7th Cir. 2009) although the Regulations specifically instruct ALJs to consider claimants' daily activities. 20 C.F.R. § 404.1529(c)(3)(i). He then concluded the ALJ did not place undue emphasis on Plaintiff's daily activities when finding that Plaintiff was not disabled. The Court agrees.

The Court finds the ALJ did not improperly assess the impact of Plaintiff's daily activities on his symptoms. The ALJ discussed that Plaintiff reported that he independently performed some chores, travelled by walking and using public transportation and prepared simple meals. (R. 36). She also noted that Plaintiff shoveled snow and performed yard work during the time he claimed to need a cane and such activities are clearly contrary to Plaintiff's allegations of constant cane usage. (R. 36). In short, the ALJ took Plaintiff's daily activities as only one factor, among several, to lead her to conclude Plaintiff's statements regarding his symptoms were overstated. (R. 34-36).

## 5.  ALJ's Consideration of Plaintiff's Financial Worries

Finally, the Plaintiff contends the ALJ perceived that Plaintiff was more interested in obtaining disability than in treatment because he shared at times his concern about getting disability benefits with his health care providers. "Time and

again, the Seventh Circuit has reminded the lower courts that they are not to substitute their judgments for that of the ALJ on issues of credibility since the ALJ was in a far better position to make the credibility judgment." *Orienti v. Astrue*, 958 F. Supp. 2d 961, 975 (N.D. Ill. 2013). There is no dispute that throughout the record, Plaintiff's own physicians noted his interest in obtaining disability. (*See* Doc. 20 at 11 (recounting places in the record where Plaintiff expressed his interest in obtaining disability)). The ALJ noticed that Plaintiff turned down or expressed no interest in treatment options that could alleviate his pain. In her opinion, he seemed more interested in simply getting documentation to support a disability finding than exploring viable treatment options. Even if this Court disagreed with the ALJ's opinion of this evidence, it cannot dispute that her opinion rests upon concrete factual instances in the record that she cited in support of her reading. The Court will not substitute its opinion for the ALJ's as long as such opinion rests on an adequate factual foundation. Moreover, the ALJ did not use her opinion of this evidence as the singular reason she discounted Plaintiff's statements.

For these reasons, the Court finds the ALJ's evaluation of Plaintiff's symptoms does not require a remand.

## CONCLUSION

The Court has exercised its duties under Federal Rule of Civil Procedure 72 and reviewed *de novo* the portions of the Report and Recommendation (Doc. 20) to which the Plaintiff objected and the other portions of the document for clear error. The Court hereby ADOPTS the Report and Recommendation of Magistrate Judge Eric Long (Doc. 20) in full. The Court DENIES Plaintiff's Motion for Summary

Judgment (Doc. 14) and GRANTS the Commissioner's "Motion For An Order Which

Affirms The Commissioner's Decision" and Memorandum of Law (Doc. 18).

Defendant's motion for extension of time (Doc. 22) is DENIED. CASE

TERMINATED.

SO ORDERED.

Entered this <u>24th</u> day of September, 2018.


                                                       s/ Joe B. McDade
                                                     JOE BILLY McDADE
                          United States Senior District Judge